THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CESAR D. GONZALES ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06 C 3519 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Arlander Keys |
| ) | |
| MICHAEL O. LEAVITT, ) | |
| Secretary of Health ) | |
| and Human Services ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Currently before this Court is Defendant's Motion For
Summary Judgment, filed pursuant to Federal Rule of Civil
Procedure 56. The plaintiff, Mr. Gonzales, sued the defendant
pursuant to Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e, *et. seq.*, Section 102 of the Civil
Rights Act of 1991, and the Age Discrimination in Employment Act,
29 U.S.C. 626 and 633a, claiming that he was denied a promotion
because of his national origin and age. The plaintiff also sued
the defendant for retaliation under Title VII. For the reasons
set forth below, summary judgment is granted with regard to both
the discrimination and retaliation claims.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Cesar D. Gonzales is a 67 year old male, whose
national origin is Filipino. He was employed by the Chicago

Regional Office of the Health Resources and Services Administration ("HRSA" or the "Agency") from April 1980 to January 2006. Mr. Gonzales began his employment with HRSA in 1980 as a staff accountant, and at some point during his employment he became a Public Health Advisor at the GS-13 level.

In September 2003, Mr. Gonzales applied for one of two newly created "Regional Coordinator" positions. If Mr. Gonzales had been selected, he would have received a promotion from his GS-13 level to the GS-14 level. At the time of Mr. Gonzales' application, David Bingaman, the Operations Director of the Chicago Regional Office, was his first-level supervisor and Rick Wilk, the Division Director, was his second-level supervisor.

Ten applicants, including Mr. Gonzales, were considered for the Regional Coordinator positions in Chicago. Each candidate submitted an application and was interviewed by a panel consisting of Messrs. Wilk and Bingaman, and at least one manager from a different HRSA regional office. The interview process consisted of the following:

- Each candidate was asked the same questions relating to the following eight factors: (1) organizational performance improvement; (2) public health skills; (3) community dimensions of practice skills; (4) analytical skills; (5) policy development and program planning; (6) communication; (7) diversity awareness; and (8) leadership/political

2

awareness;

- The key criteria upon which the candidates were evaluated were: (1) written and verbal communication skills; (2) organizational or problem-solving skills; (3) leadership skills, such as the ability to work effectively with people and to handle challenging or politically sensitive situations; and (4) public health program knowledge relevant to the type of organizations for which HRSA would conduct performance reviews;

- The interview panel scored the responses of each candidate for each factor, assigning a maximum of five points and a minimum value of one point;

- After a discussion, the panel arrived at a consensus value for each response an applicant offered, which was added together to arrive at an overall maximum of 40 possible points;

- After the completion of all the interviews, Messrs. Wilk and Bingaman discussed the three candidates with the highest scores.

Out of the ten candidates, Mr. Gonzales received the second lowest score of 17. At the end of the interview process, Mr. Wilk recommended to James Macrae, the Associate Administrator for HRSA's Office of Performance Review, that Patricia Johnson (who received the highest score) and Stephen Laslo (who received the

third highest score), both of whom are Caucasian, be selected to fill the Regional Coordinator positions in Chicago. Ultimately, both recommended candidates were selected to fill the positions, effective April 4, 2004. On March 8, 2004, Messrs. Wilk and Bingaman informed Mr. Gonzales that he was not selected for either of the two Regional Coordinator positions. Mr. Gonzales subsequently filed a formal complaint with HRSA's Equal Employment Opportunity (EEO) office in March 2004, claiming he was discriminated against on the basis of his age and national origin.

In early March of 2004, during the course of his employment, Mr. Gonzales submitted a draft of a "Quality Improvement Letter" to Messrs. Wilk and Bingaman for review. The letter was subsequently sent back to Mr. Gonzales for correction of grammatical and typographical errors.

Between June and December of 2004, HRSA's Chicago Regional Office conducted 26 grantee performance reviews. Training liaisons and former state team leaders were selected to act as team leaders. Team leaders participated in planning meetings geared to determine how performance reviews would be conducted and to discuss the various roles of the team leaders and the Regional Coordinators. Def.'s Mot. at 5. Mr. Gonzales was not originally selected to be a team leader. It was later decided that all GS-13 employees would participate in these meetings;

4

therefore, Mr. Gonzales ultimately acted as a team leader on multiple occasions in 2004 and 2005.

On August 30, 2005, Mr. Bingaman recommended that Mr. Gonzales be suspended for five days for inappropriate conduct based on Mr. Gonzales' disruptive behavior during the performance review. Mr. Wilk sustained the recommendation. Mr. Gonzales elected to file a union grievance contesting the suspension. On November 14, 2005, Mr. Bingaman recommended that Mr. Gonzales be suspended for seven days after being cited for failing to follow supervisors' instructions and inappropriate confrontational behavior toward a coworker. Mr. Wilk upheld the suspension. Once again, Mr. Gonzales filed a union grievance contesting the suspension. After further review, the Deputy Associate Administrator upheld the five day suspension for failing to follow supervisors' instructions. The union did not arbitrate this decision.

For the time period between December 2004 and September 2005, Mr. Gonzales received a performance rating of "marginally successful." Def.'s Mot. at 8. In January of 2006, Mr. Gonzales was placed on a performance improvement plan and eventually retired from his position later that month. Mr. Gonzales received a Right to Sue letter from the EEOC and filed this action within 90 days of receipt of that decision, on June 28, 2006. Mr. Gonzales claims that he was denied a promotion to one

of the two Regional Coordinator positions because of, or motivated by, his national origin and age. Mr. Gonzales also claims that the defendant retaliated against him when he sought EEO counseling after having been denied one of the Regional Coordinator positions. Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that Mr. Gonzales has failed to make out a prima facie case of discrimination or retaliation.

## STANDARD OF REVIEW

Summary judgment will be granted where the pleadings and supporting documents show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P 56(c); *Lewis v. City of Chicago et al*, 496 F.3d 645, 650 (7th Cir. 2007). Whether a fact is material to the dispute is established by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue as to one of these material facts exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Additionally, at this juncture, it is not the role of the Court to make "credibility determinations nor choose between competing

6

inferences." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993); *See also Paz v. Wauconda Healthcare and Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006). However, in determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999). The moving party initially bears the burden of showing that no genuine issue of material fact exists in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1985).

On the other hand, if the moving party meets it's burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial, and the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading ...." *Anderson*, 477 U.S. at 257. Moreover, "[a] Title VII plaintiff can avert summary judgment 'either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the *McDonnell Douglas* formula.' " *Paz*, 464 F.3d at 665 (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005).

In addition, parties must be in strict compliance with Northern District of Illinois Local Rule 56.1. Under Local Rule 56.1, the party moving for summary judgment must submit a

7

statement of material facts, written in short numbered paragraphs, along with citations to admissible evidence. Loc. R. 56.1(a); *Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003). The opposing party must respond to each paragraph by either admitting or denying the allegations, and specifically citing to supporting materials showing the existence of a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The parties must support all disputed facts with "specific references to ... parts of the record." Courts need not "scour the record in an attempt to locate the relevant information supporting the Rule 56.1 claims. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). The Seventh Circuit has repeatedly "sustained the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Id.*; *see also Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary materials.") If the party opposing summary judgment fails to identify supporting material in the record, the moving party's statements will be deemed admitted, assuming these statements are properly supported in the record. Loc. R. 56.1(b)(3(B); *Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir.

8

## **DISCUSSION**

In his complaint, Plaintiff asserts two causes of action: 1) employment discrimination on the basis of national origin and age and 2) retaliation, both in violation of Title VII. The Court will consider these two causes of action in turn.

### **I. Discrimination on the Basis of Age and National Origin**

There are two ways a plaintiff can avert summary judgment of a Title VII claim. The first is the "direct method," whereby the plaintiff must show factual evidence of the defendant's intent to discriminate. The second is the use of the indirect, burden-shifting method announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). Under the first method, direct evidence of discrimination is evidence which, if taken as true, "will prove the particular fact in question without reliance on inference or presumption." *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 2005).

Where there is no direct evidence, the plaintiff may raise an inference of discrimination, by making a prima facie case, and shift the burden of proof to the defendant. *See McDonnell*, 411 U.S. at 802. A prima facie case is made out if the plaintiff can show that (i) he is a member of a protected class under Title VII; (ii) that he applied and was qualified for a job for which

9

the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that the employer ultimately chose a person with the same qualifications as the plaintiff. *McDonnell*, 411 U.S. at 802. The plaintiff must provide sufficient evidence that establishes, by a preponderance of the evidence, each element of a prima facie case. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081,1088 (7th Cir. 2000). If the plaintiff makes a prima facie showing of discrimination, then the burden is shifted to the employer to give a legitimate, nondiscriminatory reason for not choosing the plaintiff for the position.

Turning to the present case, both parties appear to agree that there is no direct evidence of discrimination. Therefore, in order for Mr. Gonzales to survive summary judgment, he must successfully make a prima facie showing of discrimination using indirect evidence. The defendant claims that Mr. Gonzales is unable to make out a prima facie case, because he cannot make out a showing of the fourth prong. In other words, he cannot show that Ms. Johnson and Mr. Laslo were not better qualified for the positions than was Mr. Gonzales. The Court agrees with the defendant.

The defendant has given sufficient reasons as to why HRSA ultimately viewed Ms. Johnson and Mr. Laslo as superior candidates for the Regional Coordinator positions. The plaintiff

does not appear to dispute that, both Ms. Johnson and Mr. Laslo hold advance degrees in relevant subjects, including policy and administration, political science/public policy analysis, and public administration. Moreover, in addition to Ms. Johnson's four years of experience with HRSA, she also has prior experience at other health organizations, including eight years at Linden Oaks Hospital and four years at the Mental Health Center of Lasalle county. Additionally, the defendant contends that Ms. Johnson's knowledge in public health can also be credited to her work experience at the Grundy and DuPage County Health Departments during 1979-1981 and 1998-1999. Ms. Johnson also conducted public health research while employed as a research assistant with the Health and Policy Centers at the University of Illinois in Chicago. During his deposition, Mr. Wilk, who recommended Ms. Johnson for the position, noted that, in addition to her work experience, she was chosen because she received the highest score out of all ten applicants and she provided in-depth answers to questions asked. He also noted that her application was well written, clear and concise and that she had also recently received a performance rating of "outstanding."

Mr. Laslo has similarly impressive qualifications. Mr. Laslo has fifteen years' work experience with HRSA, and before that, he worked for the Social Security Administration. The defendant submits that Mr. Laslo has exhibited leadership skills

when he served as Acting Director of the Midwest Cluster's
Eastern Operations Division for approximately a year and a half,
and as Team Coordinator for the State of Michigan for
approximately two years. Prior to that, Mr. Laslo was employed
as an administrator of a health center in rural Missouri. Mr.
Wilk noted that Mr. Laslo received the third highest score out of
the ten candidates and that, during the interview, Mr. Laslo
answered questions thoroughly, providing relevant examples
demonstrating that he is qualified for the position. Mr. Wilk
also noted that Mr. Laslo had most recently obtained a
performance rating of "outstanding."

In contrast, the plaintiff holds only a bachelor's degree.
Mr. Gonzales also received the second lowest score of all ten
candidates. His most recent performance rating was "fully
successful," rather than "outstanding." Both Mr. Wilk and Mr.
Bingaman noted that the plaintiff exhibited poor communication
skills during his interview, by mumbling, not completing
sentences or poor overall organization of his communicated
thoughts. They also noted that Mr. Gonzales gave examples of
experience that were old or not relevant, since his past work
experience had focused mostly on the financial aspects of health
programs. Although the plaintiff was trained at John Hopkins
University and has a long history of public health related
experiences, this does not show that he is more qualified for the

position.

While the plaintiff makes note that he received several awards from HRSA from 2000 to 2002, the defendant notes that the same is true for both of the candidates chosen. Ms. Johnson received several monetary and time-off awards from 2000-2002, she was a Federal Employee of the Year Finalist in May 2002, and she received the HRSA Administrator's Special Citation in September 2003. Similarly, Mr. Laslo was named a fellow in the Council for Excellence in Government Programs for the 1999-2000 year, and he received the HRSA Administrator's Special Citation for leadership and promoting the agency's mission for the years 1999 to 2002. In addition, in September 2003, Mr. Laslo received the Administrator's Award for Excellence, HRSA's highest award.[1]

After an examination of Mr. Gonzales' qualifications compared to those of the two candidates chosen for the Regional Coordinator positions, the Court finds that the plaintiff is unable to make a prima facie showing that the candidates chosen had equal or lesser qualifications compared to that of the plaintiff. Therefore, the defendant's motion for summary judgment on the discrimination claim is granted.

---

[1] It should be noted that, although the plaintiff does provide statements of other candidates who stated that they believed that the promotions were given based on race, this does not help answer the question of whether the candidates chosen were equally or less qualified than Mr. Gonzales. Therefore, those statements are not relevant here.

13

## II. Retaliation Claim

Title VII makes it unlawful for an employer to discriminate "against any individual ... because he has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C. §§ 2000e to 2000e-17] or because he has made a charge ... under this subchapter." 42 U.S.C. § 2000e-3(a). Like discrimination claims, a plaintiff can overcome summary judgment in a retaliation case by presenting direct evidence, or by satisfying the indirect method of proof announced in *McDonnell*. Under the direct method, a plaintiff must show that (i) he engaged in a statutorily protected activity; (ii) he suffered a material adverse action taken by the employer; (iii) there was a causal connection between the two. *Lewis v. City of Chicago*, 496 F.3d 645, 665 (7th Cir. 2007)(citation omitted). To establish a prima facie case of retaliation under the indirect method of proof, the plaintiff must show that: (i) he engaged in a statutorily protected activity; (ii) he performed his job according to his employer's legitimate expectations; (iii) despite meeting those expectations, he suffered a materially adverse employment action; and (iv) he was treated less favorably than similarly situated employees who did not engage in the protected activity. *Roney v. Illinois Dept. of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007). "Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation

claim." *Id* (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006)). If the employee provides uncontradicted evidence of retaliation, the employee is entitled to summary judgment. *Wyninger v. New Venture Gear Inc.*, 361 F.3d 965, 981 (7th Cir. 2004). However, if the employer contradicts evidence presented under the direct method, then "the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if" the defendant lacked a retaliatory motive. *Id* (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

In viewing the evidence in a light most favorable to the plaintiff, the Court finds that the plaintiff does not have sufficient evidence of retaliation. Hence, the defendant's motion for summary judgment on Mr. Gonzales' retaliation claim is granted.

After Mr. Gonzales was informed that he did not receive the promotion, he filed a complaint with the EEO office in March 2004, claiming that he had suffered discrimination based on his age and national origin. Therefore, it is clear that Mr. Gonzales satisfies the first element, as he filed a complaint with the EEO office complaining of discrimination. *See Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003)("Usually a claim for retaliation is preceded by an obligatory complaint

about discriminatory conduct, so that the employer is aware of the mistreatment and the corresponding protected activity.")

Although Mr. Gonzales meets the first element, his case fails on the second, for he does not provide sufficient evidence that he suffered materially adverse employment actions. Mr. Gonzales' claim proceeds under the direct method, which requires that "the challenged action ... be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney*, 474 F.3d at 461 (citation omitted). Mr. Gonzales has proffered that he suffered adverse employment actions after he filed his EEO complaint. Specifically, Mr. Gonzales claims that, after he complained of what he believed to be unlawful discrimination, his work was unfairly criticized, he was excluded from work assignments, he was excluded from team member meetings and correspondence, he was subsequently given the lowest performance rating in his group of "marginally successful," and later was prematurely placed on a performance improvement plan. Additionally, Mr. Gonzales asserts that only he and others who filed EEO complaints stemming from the appointments of the Regional Coordinators, were sent an e-mail regarding the tracking of their assignments.

After an examination of the parties' motion papers and the record, it is clear that Mr. Gonzales' claim lacks the evidence

necessary to withstand summary judgment, because he fails to show that he suffered materially adverse employment actions. Mr. Gonzales claims that his work was unjustly criticized; however, he has not offered any clear examples of unwarranted criticism of his work. Rather, he offers only conclusory statements, such as: "Immediately after filing his EEO charge, criticisms of Plaintiff's work began. Eventually, Plaintiff was given the absolutely lowest performance rating in his group and Plaintiff, only Plaintiff, was placed on a performance improvement plan. Rather than be put on a performance improvement plan, Plaintiff chose to retire." Pl.'s Mem. Of Law in Opp'n to Def.'s Mot. For Summ. J. at 14. This gives the Court no insight into the kind of unjustified criticisms to which the plaintiff now refers. As the Seventh Circuit has repeatedly held, the parties must support all disputed facts with specific references to parts of the record in order to withstand summary judgment; however, the plaintiff has failed to do this. *See, e.g.*, *Waldridge*, 24 F.3d at 922.

The Court is also not persuaded by the plaintiff's argument that failing to initially select him as a team leader constitutes an adverse employment action. In response to Mr. Gonzales' argument, the defendant contends that the plaintiff was not originally selected as a team leader, because Mr. Bingaman anticipated that he would serve as a "financial specialist." However, Mr. Bingaman explained that it was later decided that

17

all GS-13 employees would serve as team leaders, so the plaintiff was made a team leader. The plaintiff fails to specifically address the defendant's response or show that it is pre-textual. Therefore, the defendant has presented unrebutted evidence that it would have treated Mr. Gonzales the same way had he not filed a complaint.

In addition, a low performance rating does not by itself constitute an adverse employment action. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006). And although, "negative performance evaluations may serve as direct evidence of other discrimination or as evidence at the pretext stage to suggest that the defendant's articulated reasons for the plaintiff's adverse employment action are false," Mr. Gonzales has failed to show whether his evaluation is anything other than an accurate description of his job performance. *Id.* at 740 (Plaintiff failed to show that her performance reviews were not an accurate description of her performance; consequently, she failed to raise a question of material fact with respect to the performance reviews.) Mr. Gonzales did not offer one reason as to why he did not deserve the rating he received. Rather, he merely pointed out that he received the lowest rating in his group, and stated that in the past he had received higher ratings and had previously received awards and commendations. However, just because Mr. Gonzales received a better rating in the past,

does not mean that he is automatically deserving of the same rating in the future.

The record also unambiguously reflects that Mr. Gonzales was having performance problems before he was given the rating of "marginally successful." For example, Mr. Gonzales admitted that, on December 10, 2004, Messrs. Wilk and Bingaman told him to submit two assignments to Mr. Laslo at 4:00 pm that day; however, he failed to submit either. Mr. Gonzales also admitted that, in March 2005, he sent a grantee a blank performance report and asked the Executive Director to fill in the performance measures despite prior instructions to the contrary. Although he took this action after having been specifically reminded of the Agency's policy, his only response was that it was common practice to do so. Moreover, Shreelekla Mohanty, a team leader for Third Street Community Clinic performance review, reported to Ms. Johnson and Mr. Laslo that Mr. Gonzales was late for several scheduled meetings, came to meetings unprepared, made inappropriate comments during conference calls with the grantee, refused her requests to remain at meetings after the conclusion of conference calls to discuss the next step of the review process, refused to discuss the financial measures of the performance review with her, spoke to her in a rude and disrespectful manner, and made disparaging remarks about the HRSA management team. Consequently, Mr. Gonzales was suspended for

five calendar days, and after taking formal steps to contest the suspension, it was upheld. Mr. Gonzales also admitted that, on August 30, 2005, Ms. Johnson returned him a draft report that had already been edited at least twice, but that still required extensive proof-reading and editing. The plaintiff has failed to refute what is clear from a reading of the record-that he had serious performance issues prior to his rating of "marginally successful." Therefore, it is clear Mr. Gonzales has not met his burden.

The plaintiff also fails to show that being placed on a performance plan constituted materially adverse employment action. As the defendant correctly points out, in order to succeed under the direct method, Mr. Gonzales must show that Messrs. Wilk and Bingaman knew of his retaliation complaint. *See* *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("The key inquiry in determining whether there is a causal connection under the direct method is whether Patterson was aware of the allegations of discrimination at the time of her decisions to place Luckie on a [performance improvement plan]; ... absent such knowledge, there can be no causal link between the two.") Therefore, at a minimum, the plaintiff must offer evidence that would support a reasonable inference that Messrs. Wilk and Bingaman were aware of his allegations of discrimination to the Agency's EEO office. However, even if the plaintiff were able to

show that Messrs. Wilk and Bingaman were aware of his EEO complaint, Mr. Gonzales has not been able to refute the well-documented evidence of performance problems.

Lastly, the Court is not convinced that the e-mail sent to the plaintiff regarding taking leave constitutes an adverse employment action. Assuming, however, that it does, the defendant contends that the e-mail sent to Mr. Gonzales regarding the leave policy was not a reprimand, but rather a reminder of the Agency's policy. Mr. Bingaman provided sworn testimony stating that his reminder to the plaintiff of the proper procedure regarding emergency leave was in response to Mr. Gonzales' recent failure to follow the proper protocol regarding this issue, and also having done so at least once in the past. The plaintiff has failed to show how this email constituted a reprimand. In his response brief, the plaintiff did not address Mr. Bingaman's sworn deposition, where he testified to the above; therefore, the defendant's explanation of the Agency's conduct remains unchallenged. Additionally, the emails sent out regarding the plaintiff's work do not amount to "excessive tracking." *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998)(Court found that two counseling statements both stopped short of disciplining Sweeney, but were to admonish her to improve.) The Seventh Circuit has already addressed similar conduct and noted that, "[i]f we interpreted these simple

personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal law suit ...." *Sweeney*, 149 F.3d at 557.

Taking the record, as the Court must at this stage, in the light most favorable to Mr. Gonzales, it is clear that none of the alleged instances of retaliation, either in isolation or in tandem, rise to the level of "materially adverse employment action" as required under Title VII. The Court, therefore, finds that the plaintiff does not have an actionable retaliation claim.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment of Plaintiff's discrimination claim is granted. It is further ordered that Defendant's motion for summary judgment relating to the retaliation claim is granted.

DATE: December 5, 2007     E N T E R E D:

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

22